IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FIRST NATIONAL BANK OF SYRACUSE,

    Plaintiff,

vs.                                        Case No. 10-1161-JTM

GARY HILL,

    Defendant.

MEMORANDUM AND ORDER

The plaintiff's Motion for Summary Judgment (Dkt. No. 15) is before the court. This dispute arises out of two loans granted to defendant that he has not fully paid and are due and owing. Plaintiff contends defendant owes it over $700,000. Defendant disputes the amount owed under the loans and argues the plaintiff acted in bad faith in disposing and releasing collateral meant to secure the entire balance of the loan. The court held oral argument on the motion on May 25, 2011, and took the matter under advisement. The court is now prepared to rule, and for the following reasons, the court grants the plaintiff's motion.

**I. Uncontroverted Facts**

Falcon Ridge Investment Co., L.L.C. (Falcon Ridge) was a Nevada company that owned and developed real estate. One of its assets was a sweet corn storage and processing facility in Ulysses, Kansas, operated by West Kansas Produce, L.L.C. (WKP). Falcon Ridge also owned a real estate

development in Hazen, Nevada. Falcon Ridge and WKP were owned by the following individuals, each with a 25% share: Gary Hill, Charles Dornbach, Jake Huber, and Malcolm Hill.

On or about July 28, 2006, plaintiff, First National Bank of Syracuse, loaned Falcon Ridge $1,009,559.05 at a rate of 8.3% interest pursuant to a promissory note (Falcon Ridge Loan). In connection with this loan, defendant, Gary Hill, and the other three members of Falcon Ridge executed a commercial guaranty (Falcon Ridge Guaranty). The first paragraph of the guaranty provides:

> CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE
> For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, *so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of this Indebtedness.* Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without sett-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

(Dkt. No. 21, Ex. A, pg. 1) (emphasis added). Through the guaranty defendant also waived:

> [A]ll rights or defenses based on suretyship or impairment of collateral, including, but not limited to, any rights or defenses arising by reason of (A) any 'one action' or 'anti-deficiency' law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full legal tender, of the

2

> indebtedness; (D) *any right to claim discharge of the indebtedness on the basis of unjustified impairment of any collateral for the indebtedness*; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

(Dkt. No. 21, Ex. A, pg. 2) (emphasis added). In addition to the guaranty, the loan was also secured the real and personal property in Ulysses, Kansas.

On or about June 15, 2008, plaintiff loaned WKP $635,089.26 at an interest rate of 6.5% pursuant to a promissory note (WKP Loan). Defendant, Huber, and Malcolm Hill also executed a guaranty in connection with this loan. (WKP Guaranty). The WKP Guaranty contains the same provisions the Falcon Ridge Guaranty contains. This loan was secured by the Kansas property and the Hazen, Nevada property owned by defendant and others. Prior to receiving the loan, Dornbach had released his interest in WKP to Huber and did not sign a personal guaranty for the WKP Loan.

Falcon Ridge and WKP defaulted on their loans by failing to make the required payments. As a result, the loans became due immediately, and payable in full. However, plaintiff did not immediately declare WKP to be in default and allowed defendant and Huber to continue making payments on the loan. Falcon Ridge, through Dornbach, filed for Chapter 11 bankruptcy protection in January 2009. Plaintiff made no effort to acquire the property out of bankruptcy in order to sell it and did not object to the motion filed by Dornbach, on behalf of Falcon Ridge, to short sell all the collateral through the bankruptcy. The property was sold for $1,000,000. The admitted value of the property was in excess of one million dollars, however, plaintiff wanted to get its principal on the

Falcon Ridge Loan as soon as possible. Defendant contends he had no knowledge of the bankruptcy or the short sale and that he had no opportunity to object to the sale. The parties dispute the amount applied to pay off the principal balance of the Falcon Ridge Loan, but it is clear the entire principal was paid. Additionally, $40,021.69 was applied to the principal of the WKP Loan, $53,151.39 was withheld for back real estate taxes, and $395.00 for closing costs. Despite the short sale, a deficiency remains on both loans.

At some point after default, plaintiff also entered into an agreement with Dornbach (without consideration) to release a portion of the Hazen, Nevada property securing the WKP Loan. Defendant contends Dornbach had no authority to negotiate the release of property.

Although not required to do so under the guaranties, plaintiff sent defendant a demand for all outstanding sums and indebtedness owed by Falcon Ridge and WKP, as set forth above, on March 23, 2010. The demand was returned undeliverable, because defendant no longer resided at the address he provided to the bank.[1] Each guaranty required defendant to inform plaintiff of his current address or any address change.

Plaintiff filed this suit on May 21, 2010, contending the amount due under the Falcon Ridge loan is $126,497.39 plus any and all costs incurred by the bank in connection with this action as of February 9, 2011. Plaintiff also contends defendant owes $557,785.10 on the principal of the WKP Loan and $26,544.88 in interest plus $73.60 per day from February 11, 2011, and $250 in late fees and other costs.

---

[1] Plaintiff requests this motion be taken up with all appropriate speed, because it believes defendant has left the United States and now lives in Panama. Plaintiff further believes defendant has asserted a claim in a Nevada state court case, *Dale v. Denio, et. al. v. Gary Hill, et. al*, Lyon County Nevada District Court, No. CI 19688, that may result in a distribution to defendant. Plaintiffs fear the defendant will remove any distribution he may receive from that case from the Unites States.

**II. Conclusions of Law**

*A. Legal Standard: Rule 56 Summary Judgment*

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hosp.*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Nat. Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove [nonmovant's] claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987) (alterations added).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Id.* Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting FED. R. CIV. P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose

of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

### B. Plaintiff's Burden

To carry its burden, plaintiff need only show there is no genuine issue of material fact or that any factual dispute has no legal significance. *See Dayton Hudson Corp.*, 812 F.2d at 1323 (10th Cir. 1987). Plaintiff has shown that defendant executed two guaranties respecting two loans given to him by plaintiff. The validity of the guaranties has not been challenged. Further, it is undisputed that defendant defaulted on both loans. Plaintiff has come forth with evidence of the specific amount owed. And, language in the guaranties gives it the right to collect from defendant, even if it elects not to pursue the deficiency from other guarantors or other collateral. Thus, plaintiff has carried its burden under Rule 56. The burden now shifts to the nonmoving defendant. Defendant argues there are three genuine issues of material fact precluding summary judgment: (1) the amount due an owed under the loans; (2) whether plaintiff acted reasonably in disposing of the Kansas property securing the loans; and (3) whether plaintiff properly released the Nevada property securing the WPK loan. As explained below, there is no merit to defendant's arguments, and summary judgment is appropriate.

### C. Amount Due and Owing Under the Falcon Ridge and WPK Loans

First, defendant argues there is a genuine issue of material fact surrounding the amount due and owing under the loans. Plaintiff contends, based on the testimony of Chris Floyd, co-president and CEO of First National Bank of Syracuse, that defendant owes $126,497.39 plus all other costs

incurred with this action on the Falcon Ridge Loan. Further, plaintiff contends defendant owes the following on the WPK Loan: $557,785.10 in principal; $26,544.88 in interest through February 8, 2011; $73.60 in interest from February 9, until paid; $250 in late fees; and any and all other costs incurred in connection with this action. While defendant contests these amounts, he offers no evidence to the contrary creating a genuine issue of material fact concerning those amounts. Defendant cannot create a genuine issue of material fact resting solely on allegations and denials contained in his Response. *See Anderson*, 477 U.S. at 256 (stating "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial"). Defendant must come forward with specific facts showing the existence of a genuine issue of material fact. *Id.* He complains that the plaintiff's records concerning Falcon Ridge and WPK's payment history are incomplete, yet does not produce evidence disputing those amounts. Without factual support, such arguments are insufficient to show a genuine issue of material fact.

Defendant also argues he is without evidence to contest plaintiff's records, yet he fails to invoke Fed. R. Civ. P. 56(d). This Rule provides:

> **When Facts Are Unavailable to the NonMovant**. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>     (1) defer considering the motion or deny it;
>     (2) allow time to obtain affidavits or declarations or to take discovery; or
>     (3) issue any other appropriate order.

FED. R. CIV. P. 56(d). Even if defendant had made such a motion, the court has wide discretion in granting or denying it. *Jensen v. Redevelopment Agency*, 998 F.2d 1550, 1553-54 (10th Cir. 1993). To obtain relief the nonmovant must satisfy several requirements. "By affidavit, he must explain:

(1) why facts precluding summary judgment are unavailable; (2) what probable facts he can find through further discovery; (3) what steps he has taken to obtain such facts; and (4) how additional time will allow him to controvert facts." *Burdett v. Vigindustries, Inc.*, No. 10-1083, 2011 WL 1702509, at *1 (D. Kan. May 4, 2011) (citing *Price v. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000)). "'A party may not invoke Rule 56[d] by simply stating that discovery is incomplete but must state with specificity how the additional material will rebut the summary judgment motion.'" *Id.* (quoting *Garcia v. United States Air Force*, 533 F.3d 1171, 1179 (10th Cir. 2008)).

Defendant has not submitted an affidavit explaining why he could not garner sufficient facts to controvert plaintiff's facts, what facts he hopes to find, or any effort he has taken to obtain the facts. Absent this showing, defendant's complaint that he has insufficient facts to challenge plaintiff's numbers fails. Thus, because defendant failed to carry his burden of proving a genuine issue of material fact concerning the amount due and owed under the loan, summary judgment is appropriate on this issue.

*D. Reasonableness of the Property Sale Securing the Loans*

1. Common Law

Next, defendant argues he has a common law right to rely on the bank's preservation of security for the loans in order to aid in payment on his debts. Essentially, defendant argues plaintiff has harmed his right to pursue contribution by selling the Kansas property below market value. In support of his argument, defendant cites *Kee v. Lofton*, 12 Kan. App.2d 155, 737 P.2d 55 (1987). *Kee* does not support defendant's position. *Kee* was an action between two guarantors, one of which was seeking contribution from the other. 12 Kan. App.2d 155, 156-58, 737 P.2d 57-58. The only

8

issue decided by the court was when the statute of limitations begins to run against the guarantor seeking contribution. *Id.* at 158, 737 P.2d at 58. The only proposition even remotely relevant to this case is *Kee's* statement that "[t]he right to seek contribution does not arise until a guarantor has paid more than his or her share of the common obligation. Thus, the right to contribution is contingent until the guarantor pays more than his or her fair share." *Id.* at 160, 737 P.2d at 59. The case says nothing about a guarantor's rights if a creditor has impaired the right to pursue contribution.

Kansas common law does state that impairment of collateral by a guarantee discharges a guarantor's obligation under the guaranty. *Kan. State Bank & Trust Co. v. DeLorean*, 7 Kan. App.2d 246, 256, 640 P.2d 343, 351 (1982) (citing *Withers v. Berry*, 25 Kan. 373, 375 (1881)). However, a guarantor can waive an impairment of collateral defense by consenting to it in the guaranty. *Id.* The *DeLorean* Court held—without determining the collateral was impaired—that the defendant had consented to whatever impairment might occur and affirmed the trial court's ruling on that issue. *Id.* at 257, 640 P.2d at 351 ("However desirable it might have been that foreclosure occur at an earlier date or that routine inspections be performed, DeLorean clearly consented to less vigorous debt collection procedures. He cannot now be heard to complain that the collateral for the debt was impaired as a result.").[2] Here, even if defendant had presented facts that plaintiff impaired the collateral, he waived his common-law right to complain about a possible impairment in the

---

[2]The specific guaranty provision provided:
"I hereby authorize you at any time in such manner and upon such terms as you may see fit, to extend the time for or change the manner or terms of payment of any such sum or sums of money or any part thereof, without notice to me, and I hereby agree that such extension of time for or change in the manner or terms of payment shall not in any way release me from or reduce my liability on this guaranty."
*Kan. State Bank & Trust Co. v. DeLorean*, 7 Kan. App.2d 246, 256, 640 P.2d 343, 351 (1982).

guaranties. *See* Dkt. No. 21, Ex. A, pg. 2, Ex. B, pg. 2 ("Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including . . . any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the indebtedness.").

2. Applicability of the Kansas U.C.C.

Defendant also argues plaintiff failed to sell certain personal property in a commercially reasonable manner and in good faith, in breach of certain provisions of the Kansas Uniform Commercial Code. Before the court reaches this question, it is necessary to determine if the U.C.C. provisions apply to continuing guaranties—a question defendant fails to address. Defendant cites Kan. Stat. Ann. §§ 84-1-201, 84-9-207, and 84-9-504 in support of his argument that plaintiff violated the U.C.C.

First, defendant argues Section 84-9-207 requires the bank, as a secured party, to preserve the collateral in its possession. Section 9-207 provides, in part, "a secured party shall use reasonable care in the custody and preservation of collateral in the secured party's possession." KAN. STAT. ANN. § 84-9-207(a) (2009). The Kansas Court of Appeals and others have held that § 9-207 (or like provision) does not apply to a continuing guaranty not tied to collateral, as is the case here, and therefore, the guarantor is not a "secured party" for purposes of 9-207(a). *See, e.g.*, *First City, N.A. v. Air Capitol Aircraft Sales, Inc.*, 820 F.2d 1127, 1134 (10th Cir. 1987) ("a continuing guaranty agreement . . . is not an 'instrument' as defined by the UCC and therefore a guarantor is not a 'party to the instrument' and may not rely on § 3-606") (applying OKLA. STAT. ANN. tit. 12A, § 3-606, identical to Kansas's § 9-207); *Halpin v. Frankenberger*, 231 Kan. 344, 349, 644 P.2d 452, 456

(1982); *Union Planters Nat'l Bank of Memphis v. Markowitz*, 468 F. Supp. 529, 535 (W.D. Tenn. 1979). Thus, § 9-207 does not apply to the continuing guaranties in this case.

Defendant next argues that the impairment of collateral doctrine applies through § 9-504. Current section 9-504 involves indication of collateral in a financing statement—it appears defendant has cited an older version of the Kansas U.C.C. Nevertheless, the analogous provision defendant likely meant to cite is § 84-9-610. This presents a much different issue than that presented respecting § 9-207. One in which several courts have struggled to resolve, including this district. *See United States v. Hunter*, 652 F. Supp. 774 (D. Kan. 1986). This court could not locate a Kansas Court of Appeals or Kansas Supreme Court decision that has addressed this precise issue. However, both this district and the Tenth Circuit have found that § 9-504 (§ 9-610) does apply to a continuing guaranty. *See United States v. Kelley*, 890 F.2d 220, 224 (10th Cir. 1989); *United States v. R.T. Enterprises, Inc.*, No. 97-1118, 1998 WL 166568, at *3 (D. Kan. Jan. 6, 1998); *Hunter*, 652 F. Supp. at 778. Section 9-610 provides, in part, "[a]fter default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing." KAN. STAT. ANN. § 84-9-610(a) (2009). Further, "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." *Id.* § 84-9-610(b). In concluding § 9-504 (§ 9-610) applied to a continuing guaranty, the *Hunter* court noted that the term "debtor" encompassed guarantors and, therefore, found the section applicable. 652 F. Supp. at 781. However, the main issue in *Hunter* was whether the "commercial reasonableness" requirement could be waived in a guaranty. *See id.* at 778-80. After extensive analysis, the court concluded the "commercial reasonableness" requirement could

not be waived based on § 9-501(3)(b) (current § 9-602(7)).[3] *Id.* at 782. Similarly, the *Kelley* court also held "guarantors are to be treated as debtors under Kan. Stat. Ann. § 84-9-504(3) [§ 9-610] and 84-9-501(3) [9-602(7)], and [are] not permitted to waive the commercial unreasonableness defense." 890 F.2d at 224 (alterations added).

This court finds it unnecessary to decide (1) whether § 9-610 applies to these guaranties and (2) whether commercial reasonableness may be waived. Before reaching those questions, it is necessary to consider that a provision in each guaranty clearly provides the "Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or *against any collateral securing the Indebtedness*, this Guaranty or any other guaranty of this Indebtedness." Dkt. No. 21, Ex. A. pg. 1, Ex. B, pg. 1. Even if § 9-610 applies and the sale of property was not commercially reasonable, it would not avoid defendant's obligation under the guaranties.[4]

Defendant's arguments about applicability of the U.C.C. miss the essence of the dispute in this case—whether plaintiff can enforce the provisions in the guaranties against defendant.

---

[3]Section 9-602(7) provides:
Except as otherwise provided in K.S.A. 84-9-624 and amendments thereto, to the extent that they give rights to a debtor or obligor and impose duties on a secured party, the debtor or obligor may not waive or vary the rules stated in the following listed sections . . . . (7) K.S.A. 84-9-610(b) . . . and amendments thereto which deal[s] with disposition of collateral.
*Id.*

[4]At oral argument defendant specifically pointed to *R.T. Enterprises*, in an effort to bolster his argument. Much like this case, that case also involved a loan secured by various collateral and a commercial guaranty signed by the defendant. The court found the Kansas U.C.C. §§ 501 and 504 (current Sections 602 and 610) applied and could not be waived in a commercial guarantee. *R.T. Enterprises*, 1998 WL 166568, at *3. In denying plaintiff's summary judgment motion the court stated "if the defendants can prove a commercially unreasonable delay an a consequent loss, they may have at least a partial defense to SBA's claims." *Id.* This holding does not dictate the same result in this case. Plaintiff has proved and defendant does not contest the validity of the guaranties in this case. Even if defendant could prove the sale was commercially unreasonable it would not provide him a defense to avoid his obligation under the guaranties, which is the only pertinent issue to consider in this case. Thus, this court does not feel obliged to deny summary judgment based on the holding in *R.T. Enterprises*.

Defendant does not dispute the validity of the guaranties, yet he tries to avoid his obligation under them by arguing plaintiff should have and could have satisfied the debt through another avenue. Such arguments have little bearing on the validity of the guaranties.

This court finds defendant has not created a genuine issue of fact concerning the validity and enforceability of the commercial guaranties. Defendant's argument about the commercial reasonableness of the sale, to the extent he may have a valid argument, is inapplicable to the issue in this case. Therefore, defendant may not avoid summary judgment on this ground.[5]

*E. Release of the Hazen, Nevada Property*

Finally, defendant argues there is a genuine issue of material fact surrounding the release of the Hazen, Nevada property, which secured, in part, the WPK loan. Essentially, defendant argues Dornbach had no authority to negotiate a release on this property because he was no longer an owner or member of WPK. Defendant also argues the bank violated its fiduciary duty to preserve collateral when it released the Hazen property without consideration.

Once again defendant fails to show how this alleged improper release affects his obligations under the guaranties. As stated previously, even if Dornbach had no authority to negotiate a release on WKP's behalf and plaintiff improperly released some of the Hazen, Nevada property, defendant cannot get around the provision in the guaranties making him liable regardless of what happens to

---

[5]Defendant also generally cites to Section 84-1-201. That section provides: "'Good Faith,' except as otherwise provided in article 5 of chapter 84 of the Kansas Statutes Annotated, and amendments thereto, means honesty in fact and the observance of reasonable commercial standards of fair dealing. KAN. STAT. ANN. § 84-1-201(b)(20) (2009). This section is the general definition section of the U.C.C. which defines good faith in the places in which it is used throughout the U.C.C. and does not require separate analysis.

the additional collateral securing the loan. Thus, defendant may not avoid summary judgment on this ground.

Even if this alleged improper release had any bearing on the result of this case, it is also troubling that defendant has failed to come forward with evidence creating a genuine issue of material fact on this issue. To the extent the expedited discovery has limited his ability to gather certain facts he should have come forward with an affidavit explaining "(1) why facts precluding summary judgment are unavailable; (2) what probable facts he can find through further discovery; (3) what steps he has taken to obtain such facts; and (4) how additional time will allow him to controvert facts." *Burdett*, 2011 WL 1702509, at *1 (citing *Price*, 232 F.3d at 783). Unsupported speculation is not enough to avoid summary judgment. *See Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010) ("'Unsupported conclusory allegations do not create a genuine issue of fact.'") (quoting *L & M Enters., Inc. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000)).

IT IS ACCORDINGLY ORDERED this 1st day of June, 2011, that Plaintiff's Motion for Summary Judgment (Dkt. No. 15) is granted.

                                          s/ J. Thomas Marten
                                          J. THOMAS MARTEN, JUDGE